Filed 6/24/25  Marriage of Alexander and Colacito CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of MIRABELLA ALEXANDER and BENJAMIN COLACITO. | C099322 |
| MIRABELLA ALEXANDER, | (Super. Ct. No. 16FL06794) |
| Appellant, | |
| v. | |
| BENJAMIN COLACITO, | |
| Respondent. | |

Mirabella Alexander appeals from several orders issued by the court in a dissolution proceeding, including (1) an order denying her request to move to Puerto Rico with her two minor children and a subsequent order denying her motion to reconsider that order, (2) an order denying her request to renew a domestic violence restraining order issued against her former husband, respondent Benjamin Colacito, and (3) an order

1

regarding custody and visitation.[1]  We affirm the first three orders, and determine the fourth order is a temporary custody order and is not appealable.

## BACKGROUND

Mirabella and Benjamin were married in 2012 and divorced in 2018, and this appeal involves several orders issued in the dissolution case after the judgment of dissolution was issued.  The parties have two young children who were born in 2012 and 2016.  For reasons that are not clear, in late 2017, Mirabella's parents (and the children's grandparents) were named the children's legal guardians in a separate case.  The grandparents' guardianship of the children was terminated in January 2020.  The guardianship case is not at issue here.

In early 2018, Mirabella filed a request for a domestic violence restraining order (DVRO) against Benjamin based on allegations he had raped her.  In February 2018, the court issued a five-year DVRO.  That order is not directly at issue here.

On March 2, 2020, the court in this case entered an order stating Mirabella "shall have sole legal and physical custody" of the children, Benjamin shall have two hours of supervised visitation two days a week, and the grandparents shall have visitation on alternate weekends.  As far as we can tell, this is the first custody order entered in this case.  That order is not at issue here.

In late 2021, Benjamin filed a request to terminate the DVRO, grant him joint legal custody, and modify his visitation time.  By order dated March 1, 2022, the court denied the request to terminate the DVRO.  It also found Benjamin had *not* rebutted the presumption set forth in Family Code[2] section 3044, which provides, "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within

---

[1]    We refer to the parties by their first names and mean no disrespect.

[2]    Undesignated statutory references are to the Family Code.

2

the previous five years against the other party seeking custody of the child, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." The court noted that additional information "may be helpful . . . in assessing the factors set forth under section 3044," and it ordered Benjamin to complete in-person anger management and parenting courses.[3] This order is not at issue here.

In September 2022, Mirabella filed a request for a move-away order, seeking permission to move to Puerto Rico with the children. A trial on the request was scheduled for mid-2023.

In February 2023, Mirabella filed a request to renew the DVRO permanently.

In May 2023, a two-day trial was held on Mirabella's move-away request, and on May 15, 2023, the court issued an order denying the request. Mirabella filed a motion to reconsider that order, which the court denied by order issued July 17, 2023.

A separate trial was held on Mirabella's request to renew the DVRO, and on July 10, 2023, the trial court issued an order denying the request.

Finally, on August 2, 2023, the court held a hearing "to determine issues of child custody and child visitation," and on August 7, 2023, it issued an order stating Mirabella "shall continue to have sole legal and physical custody" of the children, and starting in September 2023, Benjamin would have gradually increasing visitation with the children.[4]

---

[3] Section 3044 identifies several factors that courts must consider when deciding whether the presumption has been overcome, including whether the perpetrator has successfully completed a batter's treatment program and a parenting class. (§ 3044, subd. (b)(2)(A) & (C).)

[4] We note that all prior orders regarding custody and visitation provided Mirabella had sole legal and physical custody of the children; the only thing that changed was Benjamin's visitation.

The court also scheduled another hearing to discuss "the 3044 presumption" before considering changes in custody.

On August 21, 2023, Mirabella filed notices of appeal stating she appealed from orders issued on: (1) May 15, 2023 (i.e., the order denying her move-away request); (2) July 10, 2023 (i.e., the order denying her request to renew the DVRO); (3) July 17, 2023 (i.e., the order denying her motion for reconsideration); and (4) August 7, 2023 (i.e., the custody and visitation order issued on that date).

On August 23, 2023, two days *after* the notices of appeal were filed, the court held a hearing on what it described as "the issue of whether to grant Father's request for joint legal and joint physical custody." That same day, it issued a written order finding: (1) "Family Code section 3044's presumption . . . does not apply . . . because the incident upon which the Court based its finding of domestic violence occurred beyond five years ago"; and (2) it was in the children's best interest that Benjamin be granted joint legal and physical custody. It thus ordered, "The parties have joint legal and joint physical custody of the minor children." Mirabella did not file a new notice of appeal regarding this order.

## DISCUSSION

We note two things at the outset. First, Mirabella is representing herself on appeal.[5] "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) Mirabella, thus, " 'must be prepared to be treated as having[] the qualifications and responsibilities concomitant with the role [she] has undertaken; [she] is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented

---

[5] So is Benjamin.

4

by counsel.' " (*Deauville v. Hall* (1961) 188 Cal.App.2d 535, 547.)

Second, "It is a fundamental rule of appellate review that the judgment [or order] appealed from is presumed correct and ' " 'all intendments and presumptions are indulged in favor of its correctness.' " ' " (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) To overcome this presumption, it is Mirabella's burden to "present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Similarly, "The mere assertion of a statutory or constitutional violation, followed by simply a citation to the statute or constitutional provision, does not merit a judicial response." (*Woods v. Horton* (2008) 167 Cal.App.4th 658, 677.) Moreover, "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]" (*In re S.C.*, at pp. 406-407; see also *Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived' "].) In order to comply with this rule, citations to the record must be provided in the relevant argument section of the briefs, and it is not sufficient to provide citations to the record in the statement of facts.[6] (See *Alki Partners, LP v. DB Fund*

---

[6] We note the argument section of Mirabella's opening brief contains only four citations to the record, three of which are incomplete because they do not actually identify the page of the record where the point can be found and instead merely describe the document (for example, "FCS Report 2/17/22") and leave it to us to locate.

5

*Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [citation to record in "[t]he factual portion of appellants' opening brief" does "not cure the failure to cite evidence in the argument section of the brief, and we will not pick and choose the portions of the brief in the statement of facts that we may think are applicable to each assertion in the argument"]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [reason for this rule "is to enable appellate justices and staff attorneys to locate relevant portions of the record expeditiously without thumbing through and rereading earlier portions of a brief"].) These rules apply to Mirabella even though she is representing herself. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523.)

As a result of these rules, we do not address those arguments that are not accompanied by meaningful legal analysis supported by citations to authority and facts in the record. We will address Mirabella's arguments as best we understand them, in the following order: (1) the court's denial of her move-away request and its subsequent denial of her motion for reconsideration; (2) the court's denial of her request to renew the DVRO; and (3) the August 7, 2023, custody and visitation order.

I

The Move-away Request

*A.*      *The relevant law and the standard of review*

Section 7501, subdivision (a), provides, "A parent entitled to the custody of a child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child." If the nonmoving parent challenges the move, he or she has the burden of proving "relocation would cause detriment to the minors." (*In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 717.) In *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1101, our Supreme Court held that trial courts "ordinarily should consider" the following factors (often referred to as the *LaMusga* factors) when ruling on a move-away request: the child's

6

interest in stability and continuity in the custodial arrangement; the distance of the move; the child's age; the child's relationship with both parents; the relationship between the parents, including, but not limited to, their willingness to put the child's interests above their own; the child's wishes if the child is mature enough for this inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently share custody. Where the proposed move is to a foreign county, trial courts should also consider "cultural" and "jurisdictional" or "enforceability" issues. (*In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 546-547.)

We review an order granting or denying a move-away request under the abuse of discretion standard. (*In re Marriage of Lasich, supra*, 99 Cal.App.4th at p. 714.) "[A] trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.) "The trial court's factual findings are reviewed for substantial evidence, in the light most favorable to the judgment. [Citations.] ' " 'The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony.' " ' " (*S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 334.) However, "A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order." (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124-1125.) It is Mirabella's burden to show the trial court abused its discretion. (*F.T.*, at p. 16.)

B.     *Additional relevant facts*

In late 2022, Mirabella filed a request seeking permission to move to Puerto Rico with the children. The trial court referred the parties to mediation, and the mediator recommended against the move away. The mediator also recommended a "[g]radual"

increase in Benjamin's parenting time (the "step-up" plan).  Mirabella disagreed with the mediator's recommendation, and the court set the matter for trial on the move-away request.

A two-day bench trial was held and, according to minute orders, 20 exhibits were admitted and the following people testified:  (1) the mediator, Colin Dow, who was also deemed an expert witness; (2) Mirabella's mother; (3) Mirabella; (4) Benjamin; and (5) Benjamin's mother.  We have not been provided with the trial exhibits and it is unclear whether they can be found elsewhere in the appendix.[7]  We also have not been provided with the trial transcripts.

The trial court issued a written order denying the move-away request.  It began by describing the children's prior and current custody arrangements, and it noted that, at the time of trial, Mirabella had sole physical and legal custody, Benjamin had unsupervised visitation every other weekend and for two hours on Thursdays, and the maternal grandparents had visitation on alternating weekends.

The court then addressed each of the *LaMusga* factors, including the additional factors relevant to foreign relocations.  It found, "the stability and continuity of the children's routines would be seriously disrupted" regardless of how it ruled.  It noted Mirabella had been the children's primary caregiver since 2020 and they had a strong and loving relationship with her that would be disrupted if she were to move to Puerto Rico without them.  On the other hand, if the children moved to Puerto Rico with her, they would be separated from (1) their maternal grandparents, who were their primary

---

[7]     The exhibits are described—i.e., "petitioner text to defendant," "photo evidence"—and also identified by date.  Appellant's appendix contains numerous texts and photos attached to various court filings, and it is possible some (or all) of the exhibits can be found elsewhere in the appendix.  It is not our job, however, to comb through the appendix to try to locate texts and photos that may or may not be the same texts or photos admitted at the trial.

caregivers for three years and with whom they still had frequent visitation; (2) their father, with whom they have been building a stronger relationship; and (3) their church. The trial court ultimately concluded the children's interest in stability and continuity weighed "slightly against relocation."

The trial court found the distance of the move—over 3,500 miles, with a flight time of seven to eight hours—would "likely create significant impediments to a continuing relationship" between the children and their father and grandparents.

It agreed with the expert that the youth of the children (seven and 11) could result in a smoother adjustment to an international relocation, but it also noted there was "persuasive testimony that the children are old enough to have . . . established firm connections in Sacramento County, particularly with their maternal grandparents and at church." It ultimately found the youth of the children weighed "against relocation for an important reason: If Mother is ever incapacitated in Puerto Rico, the children would be incapable of supporting themselves and have few (if any) resources to turn to." It noted Mirabella's main support network in Puerto Rico was her boyfriend, but that relationship was only two years old, it was partially a long distance one, and they had broken up in the past. The court also noted it "received uncontroverted testimony" from Benjamin and Mirabella's mother that Mirabella "has been diagnosed with bipolar disorder, that that condition is controlled by medication, and that she has had serious mental health crises in the past (although the condition appears to be more under control in recent years)." It found it "would be remiss if it [did] not consider what would happen to the children in Puerto Rico if Mother's relationship with the boyfriend ends and/or Mother is incapacitated for any reason."

The trial court also found the children have strong relationships with family in the Sacramento area, including their maternal grandparents, their father, and their paternal grandparents and other paternal family members. Although Mirabella testified the children got along with her boyfriend, the court found, "it is clear that the children would

9

not have similar family relationships to turn to in Puerto Rico." It thus agreed with the expert's prediction that "the children would do 'poorly' with a permanent move" due to the separation from family in Sacramento, the absence of an analogous support system in Puerto Rico, and cultural differences.

It found Mirabella and Benjamin "have poor communication and cooperation skills," and their "ability to communication and cooperate would only deteriorate further if Mother were to relocate 3500 miles away, and the parents have to work out a far more complicated and expensive visitation schedule." It also found if the children moved to Puerto Rico, "it is likely that the relationship between Father and the children would erode, to the detriment of the children."

The trial court noted Mirabella testified she had a job offer in Puerto Rico with a salary of $100,000 a year, but she was unable to produce any documentary evidence supporting her claim. For example, an e-mail she produced to corroborate the job offer indicated the offer was contingent and "the purported employer conspicuously declined to specify any salary amount."

It found the children "are too young for the Court to give serious weight to their wishes."

The trial court noted, "Although Puerto Rico is a U.S. territory and English is widely spoken, there is no question that Puerto Rico has a different culture than Sacramento County, and that Spanish is the primarily language there." It thus found "that—at least in the short term—the children would be adversely impacted socially by cultural differences and the fact that they do not (currently) speak Spanish."

Finally, it noted there was no evidence about potential jurisdictional issues and it assumed Puerto Rico would enforce any custody orders it issued.

Based on its consideration of all these factors, the court concluded Benjamin "has met his burden of showing that relocating to Puerto Rico would be detrimental to the children." It thus denied Mirabella's move-away request.

Mirabella filed a timely motion for reconsideration. Among other things, she noted the court found she had "been diagnosed with bipolar disorder," and she attached a letter from a therapist contesting that diagnosis and stating she was diagnosed with depression. Mirabella also suggested she wanted the therapist to provide further testimony on her mental health. The trial court denied the motion for reconsideration, finding Mirabella failed to provide a satisfactory explanation for the failure to produce this evidence at trial. The trial court also stated, "even if Depression is the correct diagnosis, or even if there is no mental health concern at all, that would not materially diminish the Court's central concern about the lack of a support system for [Mirabella] and the children in Puerto Rico."

### C. Analysis

Mirabella argues the court made "multiple legal errors" in its move-away analysis. As noted above, however, she has not provided us with either the trial transcript or the exhibits admitted into evidence. "Appealed judgments and orders are presumed correct, and error must be affirmatively shown. [Citation.] Consequently, appellant has the burden of providing an adequate record." (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935.) "Without a complete record, we are unable to determine whether substantial evidence support[s] the . . . findings underlying the trial court's order." (*Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 977.) "Failure to provide an adequate record on an issue requires that the issue be resolved against appellant." (*Randall*, at p. 935.) Thus, the only arguments we can consider are those that do not depend on the evidence introduced at trial and that involve alleged errors that appear on the face of the challenged order itself.[8]

---

[8] That means we do not consider Mirabella's arguments that the trial court misapplied some of the *LaMusga* factors, or that it "erroneously dismissed critical testimony" from the mediator, or its "key findings lack substantial evidence," or that its

11

Mirabella argues the trial court erred in treating this as an international move-away case because Puerto Rico is a United States territory.  We find no error.  Case law teaches that "foreign relocations [are] different in kind from intrastate and even most interstate move-away cases" in at least two respects.  (*In re Marriage of Condon, supra*, 62 Cal.App.4th at p. 546.)  "First, the cultural problem.  In some cases, to move a child from this country to another is to subject him or her to cultural conditions and practices far different from those experienced by American citizens," including, for example, where the move is "to a country where the language is one unfamiliar to [the] child." (*Ibid*.)  And second, "the jurisdictional problem.  California court orders governing child custody lack any enforceability in many foreign jurisdictions." (*Id*. at p. 547.)  Case law also teaches that "a trial court confronted with a parent's request to relocate a child to a foreign jurisdiction should consider [these] factors, in addition to those affecting a domestic move-away." (*Ibid*.)  The trial court considered both factors and found that although Puerto Rico was a United States territory and there was no evidence of any enforceability problems, "there is no question that Puerto Rico has a different culture than Sacramento County, and that Spanish is a primary language there.  Thus, the Court tends to believe that—at least in the short term—the children would be adversely impacted socially by cultural differences and the fact that they do not (currently) speak Spanish." We find this is precisely the type of analysis that case law instructs courts to engage in.  Moreover, the *LaMusga* factors are nonexclusive, and the court may consider other factors bearing on the child's best interest.  (See *Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 905.)  We thus find no error in the court's consideration of the

finding about the lack of a support system in Puerto Rico "rests on speculation rather than substantial evidence."  We also do not consider her argument the trial court improperly relied on lay testimony from Benjamin and her mother that she had been diagnosed with bipolar disorder, because in order to properly consider this argument we would need a transcript showing what testimony was given, whether objections were made, and how the court ruled on those objections.

cultural differences the children would face if they moved to Puerto Rico.  Finally, we note that, in the trial court, Mirabella acknowledged, "Puerto Rico is a different country," and she addressed the additional factors that apply in international move-away cases.  Mirabella may not change her theory on appeal and argue those additional factors do not apply because this is not an international move-away.  (See *Green v. Healthcare Services, Inc.* (2021) 68 Cal.App.5th 407, 418 [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal" ' "].)

Mirabella also argues the trial court erroneously required her to prove the move was necessary.  It is true the moving parent is not required to prove the move is necessary.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 36.)  But there is nothing in the order that suggests the trial court required her to do so.  It *did* make findings about the reason for the proposed move.  Among other things, it noted Mirabella testified she had been offered a high-paying job in Puerto Rico, but the evidence she produced to corroborate her testimony showed the offer was contingent and the salary was not set.  One of the *LaMusga* factors is "the reasons for the proposed move."  (*In re Marriage of LaMusga, supra*, 32 Cal.4th at p. 1101.)  The trial court did not err in considering *all* evidence bearing on her proffered reasons.

Mirabella also argues her fitness as a parent was "conclusively established when" the "guardianship was terminated in her favor" and she "was granted sole custody in March 2022," and the trial court erred in reconsidering her fitness when "[n]o new evidence of current unfitness was presented."  The trial court did not reconsider her fitness as a parent.  Indeed, it found it was "undisputed" she and the children had "a strong and loving relationship."  It found only that moving to Puerto Rico would be detrimental to the children considering all of the relevant factors.

Mirabella also argues the trial court erred by "[f]ailing to require Father to demonstrate detriment."  Not so.  The trial court began its decision by noting, "It is the non-custodial parent's burden to show that the move-away would be detrimental to the

13

children's interest," and it ended by finding Benjamin had "met his burden of showing that relocating to Puerto Rico would be detrimental to the children." Particularly in the absence of a record, we presume the trial court followed the law and properly required Benjamin to demonstrate detriment.

Finally, Mirabella briefly asserts the trial court erred in denying her request for reconsideration, but she fails to explain why. As the trial court accurately noted, Code of Civil Procedure section 1008, "requires that a motion for reconsideration be based on new or different facts, circumstances, or law. A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) "A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." (*Ibid*.) The trial court found Mirabella failed to identify any new or different facts, circumstances, or evidence that could not have been presented at trial, and Mirabella fails to demonstrate the trial court abused its discretion in so finding.

## II

## The Request to Renew the DVRO

### A.     *The relevant law and the standard of review*

The Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.) exists "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) Section 6345, subdivision (a), provides the trial court may renew a DVRO "upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order." "When contested, a request to renew a restraining order should not be granted . . . simply because the requesting party has 'a subjective fear the party to be restrained will commit abusive acts in the future.'

14

[Citation.] 'The "apprehension" those acts will occur must be "reasonable." ' [Citation.] 'That is, the court must find the probability of future abuse is sufficient that a reasonable woman . . . in the same circumstances would have a "reasonable apprehension" such abuse will occur unless the court issues a protective order.' " (*Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 874.) " ' "[T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." ' " (*Ibid*.)

In evaluating whether the requesting party has a reasonable apprehension of future abuse, "the mere existence of a [DVRO], typically issued several years earlier, seldom if ever will provide *conclusive* evidence the requesting party entertains a 'reasonable apprehension' of future of abuse of any kind should that order expire. But the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1291.) "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the . . . parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Ibid*.)

"We review an appeal from an order denying a request to renew a domestic violence restraining order for abuse of discretion," and "an abuse of discretion occurs when ' " 'the trial court exceeded the bounds of reasons.' " ' " (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560.) An abuse of discretion also occurs when a ruling is " ' "based on an application of improper criteria or incorrect legal assumptions," ' " and " '[t]he question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' " (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 396-397.) "To the extent that we

15

are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505.) Accordingly, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

### B. Additional relevant facts

In January 2018, Mirabella filed a request for a DVRO against Benjamin. In support of the request, she identified the following abuse: (1) on November 24, 2017, Benjamin raped her with enough force that she sustained vaginal tears and injured her wrist; and (2) on December 3, 2017, he "inserted his hand into [her] vaginal cavity and touched himself inappropriately until he was satisfied," even though she did not want him to do so. Temporary restraining orders were issued and a hearing was scheduled for February. A minute order regarding the hearing stated both parties were sworn and testified,[9] and, "The Court finds the evidence is sufficient to issue a Domestic Violence Restraining Order." The court issued the requested DVRO that same day. It expired in February 2023, five years after the date it was issued.

In February 2023, Mirabella filed a request to renew the DVRO permanently. In the request she stated that Benjamin "stalk[ed]" her on social media, and "[w]hen we get into any disagreement regarding our children, he tells me that it is ok because 'the restraining order ends in February anyways,' " which she viewed as "a threat that once the order ends, he will be free to increase his already abusive behavior." Benjamin opposed the request, stating Mirabella had ignored the terms of the DVRO on numerous occasions by initiating contact with him; he had not stalked her on social media; and

---

[9]     We do not have the transcript of this hearing.

when he mentioned the DVRO's end date it was "only to point out its affect [*sic*] on custody and parenting time for me."

A one-day trial was held in July 2023. Both parties testified and 27 exhibits were admitted. We have been provided with the trial transcript but not the exhibits admitted at trial, and we thus rely on the trial court's description of the exhibits.[10] Much of the trial testimony concerned the exhibits, and because we do not have the exhibits in front of us, the testimony can be hard to follow.

At the outset, we note the trial court found Mirabella "had some difficulty answering questions directly, and it was hard to track some of the timelines she testified about," and some of her answers were "unclear and evasive," and having reviewed her testimony, we agree. We are also told that Mirabella "at one point began sobbing so hard that the court called an early recess."

Mirabella was asked why she feared Benjamin, and she responded: "There's stalking, there's—mainly the stalking and coming after me, other—anything physical, really. Showing up at my house. I have nightmares of being shot at this park near my house. [¶] When things get—when I—you can sense it in the text messages, and I have to just go, keep your opinions to yourself. Only facts about the kids. And that's a constant thing I experience, almost on a weekly basis. [¶] And when they start getting more of him going into heavier topics, I end up having these nightmares. [¶] So the last one was about a week and a half, two weeks ago, and there's this park by my house, and I

---

[10] As with the exhibits admitted at the trial on the move-away request, some of the exhibits admitted at the DVRO renewal trial may be contained elsewhere in the appendix. For example, exhibit No. N is identified as a message that states, "Hey, I want to get an Airbnb up the mountain for part of the week with the boys . . . ." This appears to refer to a text message that was attached as exhibit No. C to a declaration filed by Mirabella in 2022 in opposition to Benjamin's request to terminate the DVRO. As noted above, however, it is not our job to comb through the appendix to try to locate documents that correspond to the exhibits.

was walking my dog, and I had a dream that I got shot. That's not normal." She also testified she wanted the DVRO renewed because of what she "experienced a week and a half ago." When asked to elaborate, she gave confusing testimony about a "disagreement" with Benjamin that occurred "[v]ia text message" where he "states his opinions. He'll just start going off on one of his tangents. And one of these things I say, 'Keep your opinions, keep your facts, you know, whatever you want, to yourself. Only communicate with me about the children.'" The court asked her to explain what she meant, and she provided lengthy testimony about conversations she had with Benjamin about parenting issues.

Mirabella admitted she had "a sexual relationship" with Benjamin a month after the DVRO was granted. When asked why, she responded, "I can come up with a million reasons," and she then launched into a one-page answer that was, as the trial court noted, "difficult to follow." She did not testify the encounter was nonconsensual. She also acknowledged she spent the night with Benjamin in Yosemite after the DVRO was issued. Benjamin testified that, about a month after the DVRO was issued, Mirabella came over to his house and initiated sexual contact with him, and the next day they went up to Tahoe together and spent the night at a hotel. He also testified they had another sexual encounter a few weeks later when she visited him while he was working in Concord.

Mirabella acknowledged that, after the DVRO was issued, she texted Benjamin pictures of herself at a football game, in Hawaii, getting a tattoo removed, or eating a meal, and she was shown texts in which she appeared to ask Benjamin to spend time with her and the children and photos in which she and Benjamin appeared together and happy. In response to a question that suggested the texts and photos showed she was not afraid of him, she responded, "You're saying that I'm so afraid, but that doesn't mean I can't co-parent." "Having a fear and constantly being afraid are two different things, but co-

18

parenting and putting myself, putting my emotions behind in the best interests of my children is what I do."

Mirabella and Benjamin both testified that, after the DVRO was issued, he signed an application to help her rent an apartment, and Benjamin testified he helped her purchase (or at least look for) a car.

Benjamin testified that, since the DVRO was issued, he took anger management and parenting classes, and he had been in counseling since 2021. He also testified he was currently in a secure and long-term relationship with another woman, and he lived with her and her children from a previous relationship. He testified about numerous instances where he and Mirabella spent time together both with and without the children without incident. He also testified about friendly (or at least civil) communications between them, as evidenced by text messages and photographs. He described their relationship as "toxic," but testified, "[o]nce . . . we are apart from each other, it started to smooth out, and then particularly when we both found ourselves in other serious relationships, contact almost entirely dissipated except for when talking about parenting time for children." In response to a question from the court, Benjamin explained that when he made statements about the DVRO terminating, he was referring to being able to ask for more custody. He believed Mirabella has used the DVRO as "a tool to maintain leverage over the access and the time I could have with the children."

On July 10, 2023, the trial court issued an order denying Mirabella's request to renew the DVRO. After summarizing the evidence, the court explained: "While Mother testified that she has a subjective fear of Father, her actions do not demonstrate she is, or remains, fearful. The court has considered text messages, photographs, and testimony of the parties and been presented with multiple instances of Mother inviting Father to events or including Father in her life, even when Father has asked her to respect their boundaries. The parties had a sexual encounter and an overnight stay in Lake Tahoe shortly after the issuance of a domestic violence restraining order. In addition, Mother's

examples of more recent conduct she is seeking to prevent, or restrain, by Father appear to be entirely custody related." It then stated it could not "conclude by a preponderance of the evidence that Mother's apprehension of future abuse by Father is reasonable in light of the evidence admitted at trial."

## C. Analysis

Mirabella's arguments about the denial of her request to renew the DVRO are scattered throughout different sections of her brief and are not always easy to identify or follow. She begins by stating her request to renew the DVRO, "satisfied all criteria: (1) Original DVRO based on admitted sexual assaults; Father's explicit admissions via text and emails, Assaults occurred with children present and, Father's own acknowledgement of 'terrible acts.' There is significant documented history of abuse through Pattern of DVRO violations, Use of children to circumvent orders, Ongoing harassment." As can be seen, she cites no evidence to support her assertions, and she thus forfeits them. (*In re S.C., supra*, 138 Cal.App.4th at pp. 406-407 ["When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited"]; *Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived' "].)

Mirabella spends several pages listing instances of "clear [DVRO] violations" on Benjamin's part, but the only evidence she cites to support her contentions are documents that are in the appendix but that were not admitted into evidence at trial.[11] But when

---

[11] She cites (1) "FCS Report 2/17/22 at p. 3; (2) "AA 232"; and (3) "AA [Declaration for Joinder], p. 3." According to the family court services report, Mirabella told the mediator that Benjamin had violated the DVRO "by driving past her residence." Page

reviewing the trial court's order, we may only consider the evidence that was before the trial court.

She also complains about "procedural errors" at the hearing, but, again, includes no citations to the record.

She includes a lengthy quote from the DVPA's definition of "abuse," but fails to clearly explain how that definition is relevant here. "The mere assertion of a statutory . . . violation, followed by simply a citation to the statute . . . does not merit a judicial response." (*Woods v. Horton, supra*, 167 Cal.App.4th at p. 677.)

Similarly, she includes a four-and-a-half-page quote from *Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 118-121, but fails to include any explanation as to how that case is relevant. "[C]iting cases without any discussion of their application to the present case results in forfeiture." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

Mirabella cites *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602-603, for the proposition that a knowing violation of a DVRO can itself be deemed an act of abuse. This is true. As defined by the DVPA, the term " 'abuse' " includes engaging in any behavior that has been enjoined pursuant to section 6320 (§ 6203, subd. (a)(4)), and section 6320 allows the court to enjoin a wide variety of behavior. Mirabella then argues the trial court "disregard[ed] Father's DVRO violations, which included; Repeated prohibited contact through text messages, Harassing communications about court proceedings, and Contact beyond permitted child visitation discussions." At another

No. 232 of appellant's appendix is part of a declaration Mirabella filed in 2022 opposing a request Benjamin filed to terminate the DVRO; there is nothing about threatening messages on page No. 232. The "Declaration for Joinder" was filed by the maternal grandmother in 2020 in support of the grandparents' motion to join in the case. On page No. 3 of the declaration, the grandmother states, "On more than once occasion [Benjamin] has tried to use the [children] as a means to communicate with Mirabella when she refused to engage with him," and Mirabella claims "[u]sing children as intermediaries" is an example of violating the DVRO.

21

point, she asserts he violated the DVRO by "repeatedly texting Mother in that he blamed her for his problems, berated her for seeking relief from the courts, and antagonized her about issues wholly unrelated to child visitation." Again, there is no citation to the record and we, thus, disregard these arguments.

Mirabella asserts the trial court "erroneously denied the DVRO renewal based solely on [the] time elapsed since the initial incidents." Once again, there is no citation to the record. We have reviewed the challenged order, and it does not appear to us that the trial court based its decision on the time that had elapsed since the initial incidents.

Finally, she appears to contend the trial court applied the wrong legal standard, because it applied the legal standard for "renewing an existing DVRO" rather than the standard for "issuing a DVRO in the first instance." We do not understand this argument because the challenged order involves her request to renew an existing DVRO, not her initial request for a DVRO.

For all these reasons, Mirabella fails to carry her burden of demonstrating the trial court committed reversible error in denying her request to renew the DVRO. (See *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006 ["the burden is on [the appellant] to demonstrate error—and also 'prejudice arising from' that error"].)

III

The August 7, 2023, Order Regarding Custody and Visitation

On August 2, 2023, the court held a hearing to discuss "custody and visitation" issues following family court services mediation. At that hearing, the trial court discussed the mediator's recommendation that (1) the parents shall have joint legal custody of the children, (2) beginning in September 2023, Benjamin shall have visitation every other weekend from Thursday after school until Sunday evening, and (3) beginning in January 2024, Benjamin's weekend visitation time shall be extended to Monday

22

morning.[12] Mirabella stated she disagreed with the recommendation and thought Benjamin should get only "one overnight every other weekend or during the week." Benjamin stated he largely agreed with the recommendation.

The court also "heard argument regarding the applicability of section 3044's presumption." As noted above, section 3044, subdivision (a) provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . . This presumption may only be rebutted by a preponderance of the evidence." From the transcript of the hearing, it appears the court was unsure about whether the presumption applied because the domestic violence that led to the issuance of the DVRO had occurred more than five years ago. The court ultimately stated it did not need to decide that issue "today" "because I'm not going to modify legal or physical custody." The trial court also scheduled a hearing for August 23 to consider the applicability of the presumption, and, if it applied, to give Benjamin the opportunity to rebut it.

The court issued a written order after hearing on August 7, 2023. In that order, the court reiterated it "need not make a section 3044 finding today because [it] is not prepared to change the current legal or physical custody orders," and "[f]or the time being, Mother shall retain sole legal and sole physical custody" of the children. It also largely adopted the step-up plan recommended by the mediator.

---

[12]    For comparison's sake, we note that, at the time, Benjamin had visitation for two hours every Thursday, and alternate weekends from Friday evening to Sunday evening. That visitation schedule was established by order entered on November 29, 2022, and Mirabella did not challenge that order. We also note the mediator made several other recommendations that are not at issue here.

As previously noted, Mirabella filed a notice of appeal on August 21, 2023, and identified the August 7 order as one of the orders appealed.  In her briefs, however, she does not identify any complaints about this order—and it is difficult to see how she could complain because the order maintains her sole physical and legal custody of the children, and only gradually and minimally increases Benjamin's visitation time.  Even if Mirabella had complaints about this order, moreover, it is well established that only *final* orders regarding custody and visitation are appealable.  (Code Civ. Proc., § 904.1, subd. (a)(14).)  Temporary or interim custody orders are not appealable.  (See *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 456 [interim custody orders are not appealable]; *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 556 [temporary custody orders are not appealable]; see also *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377 ["the right to appeal a child custody determination is generally limited to final judgments"].)  We are satisfied the August 7 order is a temporary custody order because it states, "[Mirabella] shall retain sole legal and sole physical custody" "*for the time being*," which demonstrates the custody arrangement is not yet final.

What Mirabella really complains about is the order the court issued on August 23, 2023, regarding the applicability of section 3044.  That order, which was issued the same day as the hearing, begins by stating the following:  "On August 2, 2023 the Court convened a hearing and issued orders as to Father's step-up visitation plan.  But the Court left undisturbed the orders that Mother has sole legal and physical custody of the two children.  There was discussion about the applicability of Family Code section 3044, however, the Court did not make any finding regarding Family Code section 3044 at that hearing.  Today is the time and date of hearing on Father's request for joint legal and joint physical custody."  The court then found the section 3044 presumption "does not apply" because "the incident upon which this Court based its finding of domestic violence occurred beyond five years ago."  It also found it was in the children's best interest that Benjamin be granted joint legal and physical custody, and it entered an order accordingly.

24

Mirabella contends (1) the section 3044 presumption applies in this case and the trial court erred in finding otherwise, and (2) the trial court erred in awarding Benjamin joint custody because he never requested it. We need not address the merits of these arguments, however, because Mirabella did not file a notice of appeal regarding the August 23 order. Instead, her notices of appeal indicate she appeals from orders entered on the following dates: 5/15/23 (i.e., the order denying her move-away request), 7/10/23 (i.e., the order denying her request to renew the DVRO), 7/17/23 (i.e., the order denying her motion for reconsideration), and 8/7/23 (i.e., the order maintaining Mirabella's sole custody of the children and making no finding regarding § 3044). She did not identify the August 23, 2023, order, and, indeed, she could not have done so because the notices of appeal were filed on August 21, 2023, which is two days before the hearing on the August 23 order, and two days before the order after hearing was issued.

An appellate court's " 'jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) Because Mirabella's notices of appeal did not identify the August 23 order, we lack jurisdiction to consider her arguments concerning it.

## DISPOSITION

We affirm the orders denying the move-away request, the motion for reconsideration, and the request to renew the DVRO, and we dismiss the appeal regarding the August 7, 2023, order.  Each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____/s/_____
EARL, P. J.


We concur:


_____/s/_____
KRAUSE, J.


_____/s/_____
MESIWALA, J.

26